UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| JAMES K. SCHENKE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:18 CV 79 |
|  | ) |  |
| THOMAS LEHMAN, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION and ORDER

This matter is before the court on defendants' partial motion to dismiss. (DE # 13.) For the reasons set forth below, the motion will be granted.

I.  BACKGROUND

The following factual allegations come from plaintiff James Schenke's *pro se* amended complaint and the police report attached as an exhibit to his amended complaint. (DE ## 4; 4-1.) The allegations in the amended complaint are largely consistent with the information contained in the police report. However, to the extent that the accounts differ, the court accepts Schenke's version of events as true for the purposes of ruling on the motion to dismiss.

On October 28, 2016, Tippecanoe County Sheriff Department deputies defendants Thomas Lehman and Jodi Rohler responded to a 911 call originating from Schenke's home. (DE # 4-1 at 1.) The caller hung up, and when the dispatcher returned the call it went straight to voicemail. (*Id.*) When Lehman and Rohler arrived, Schenke's wife Shauna answered the door with one of their daughters, 11-year old L.S., who was

crying. (*Id.* at 1; DE # 4 at 3.) Lehman asked Shauna if everything was ok, and Shauna told him that she was in "a little argument" with Schenke, but that they had "things all sorted out and everything is ok." (DE # 4 at 2.) Shauna told the officers that their assistance was unnecessary and unwanted. (*Id.* at 3.) The officers then entered the home without Shauna's permission. (*Id.* at 3.) The officers separated the members of Schenke's family – Schenke, Shauna, L.S., the couple's eight-year old daughter C.S., and their six-year old son W.S. – and began questioning the family. (*Id.* at 3, 23.) At the time they entered, the home was quiet and no one had any visible injuries. (*Id.* at 3.)

When Lehman spoke with Schenke, Schenke explained that he had been struggling all morning to get the family packed and out the door for a weekend trip to Chicago. (*Id.* at 13.) At one point, the children began roughhousing – jumping on his back and tugging on his arms – as he attempted to complete the packing. (*Id.*) Schenke was "sweaty" and "still winded and heart pounding" from the children's "attack" on him when, shortly thereafter, the officers knocked on his door. (*Id.* at 17.)

Schenke also told Lehman that L.S. has a history of attacking her parents and that she attacked Schenke earlier that day. (*Id.* at 12.) He claims that earlier that morning L.S. had thrown things at him, attempted to kick and punch him, and that she had hit him over the head with a suitcase. (*Id.* at 13.) Schenke told Lehman that after L.S. hit him with the suitcase, he hit her once on her waist with a belt. (*Id.*) When L.S. then punched him, he spanked her bottom twice with his hand. (*Id.* at 7-8, 13.) Schenke explained to Lehman that L.S. has an untreated mood disorder, leading to her challenging behavior.

2

(*Id.* at 8.) He told Lehman that L.S. called the police because she did not want to go to Chicago. (*Id.* at 6.)

When Lehman spoke with Shauna, Shauna told him that Schenke had pushed C.S. against the wall, pinned her there with his hand around her throat, and yelled into her ear. (DE # 4-1 at 2.) Shauna told Lehman that C.S. had been crying and talking, so Shauna did not think Schenke squeezed C.S.'s throat. (*Id.*)

Shauna also told Lehman that Schenke hit her in the hip/buttock area with a belt, and that this caused some minor pain. (*Id.*) Shauna told Lehman that Schenke used his body to push her backward and yelled at her not to say slanderous things about him. (*Id.*) She also said Schenke pushed her hard against the wall and threatened that he could slam her head through a wall if he wanted to. (*Id.*) When Schenke spoke to Lehman, Schenke reported that Shauna accused him of being "murderous" and screamed at him, "Go ahead. Slam my head through a wall. Kill me. You know that's what you want to do." (DE # 4 at 22.) While Schenke told Lehman that he did not hit Shauna, he admitted that he grabbed her face around her chin in order to speak with her during their argument. (DE # 4-1 at 1.)

Shauna told Lehman that Schenke had become abusive over the previous few years, and that he had battered her a few times but she had only reported one such incident. (*Id.* at 2.) She told Lehman that Schenke mentally abused their children on a daily basis. (*Id.*) The officers did not see any injuries on Shauna or the children. (DE ## 4 at 7; 4-1 at 2.)

3

Lehman interviewed Shauna in the master bedroom. (DE # 4-1 at 3.) While in the bedroom, Lehman noticed numerous types of ammunition. (*Id.*) Shauna told Lehman that Schenke owned a few different guns, but that none of the guns had been used during the family's dispute that day. (*Id.*) Schenke reported to Rohler that Shauna was afraid that L.S. would use Schenke's guns against the family. (*Id.* at 6.)

Lehman placed Schenke under arrest for domestic battery and Rohler transported Schenke to jail. (*Id.* at 2.) A few hours after his arrest, Lehman questioned Schenke. (DE # 4 at 7.) Schenke asked for counsel, but Lehman continued his questioning and did not provide him counsel. (*Id.*)

In his report, Lehman identified the victims of the domestic battery as Shauna, C.S., and L.S. (DE # 4-1 at 4.) A "no contact" order was completed – listing Shauna and the children on the order. (*Id.* at 2.) Lehman confiscated ten guns from Schenke. (*Id.* at 4.) The officers also contacted the Department of Child Services. (*Id.* at 3.) An Indiana Superior Court later entered a protective order, classifying Schenke as a "dangerous person" and approving the confiscation of Schenke's firearms.[1] (DE # 4 at 7, 11.) The Tippecanoe County Prosecutor ultimately declined to file charges against Schenke. (DE # 4 at 2.)

Liberally construing Schenke's amended complaint, he alleges claims for unlawful warrantless entry into his home, unlawful seizure of his person during

---

[1] It is unclear from the face of the complaint when, or if, Schenke's firearms were returned to him.

questioning, unlawful entry and/or search of his bedroom, failure to provide a *Miranda* warning during questioning, failure to stop questioning when he requested a lawyer, unlawful questioning of his children, false arrest, and unlawful seizure of his firearms. He alleges that Lehman and Rohler intentionally arrested him without probable cause, and that the officers intentionally misrepresented evidence in their police report. (*Id.* at 2-4.) Schenke also names several other defendants who were listed on Lehman's report as "assisting officers" – though Schenke does not know how they were involved. (DE ## 4-1 at 6; 4 at 7, 15.)

Defendants filed a motion to dismiss. (DE # 13.) Schenke did not respond to the motion to dismiss, and the time to do so has now passed. This matter is now ripe for resolution.

II. **LEGAL STANDARD**

A judge reviewing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant. *United States ex rel. Berkowitz v. Automation Aids, Inc.,* 896 F.3d 834, 839 (7th Cir. 2018).

Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As the Seventh Circuit explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III. DISCUSSION

### A. *Federal Rule of Civil Procedure 8(a)(2)*

Defendants first argue that this court should strike Schenke's amended complaint for failure to comply with Federal Rule of Civil Procedure 8(a)(2)'s requirement that a plaintiff plead "a short and plain" statement of the claim. Defendants argue that Schenke's 99-paragraph complaint is neither short nor plain

6

enough, as it "mix[es] factual allegations with argument, speculation, rhetorical questions, and bare assertions[.]" (DE # 13 at 1.)

The court declines defendants' request to strike the amended complaint. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). If a complaint is so lacking in organization and coherence that the court or opposing party cannot understand the factual basis of the alleged wrongful conduct, it is subject to dismissal. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The court assesses this by considering whether the court can make out the essence of the claims. *Id.* However, a complaint is not unintelligible simply because it contains repetitive and irrelevant matter. *Id.* Schenke's amended complaint – while rife with repetitive and irrelevant observations – coherently challenges the circumstances of his arrest on October 28, 2016. Thus, the court will consider all well-pleaded factual allegations and disregard improper conclusory or argumentative claims contained in the amended complaint, but declines defendants' request to strike.

  B.  *Probable Cause*

Defendants contend that Schenke's amended complaint fails to state a claim for false arrest because Lehman and Rohler had probable cause to arrest Schenke. (DE # 13 at 1.) "Probable cause is an absolute bar to a § 1983 claim for false arrest. A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and

circumstances known at the time, that a crime had been committed." *McBride v. Grice*, 576 F.3d 703, 708 (7th Cir. 2009) (internal citations omitted). "[P]robable cause just means a good reason to act (the fourth amendment protects people against 'unreasonable' searches and seizures); it does not mean certainty, or even more likely than not, that a crime has been committed[.]" *Hanson v. Dane Cty., Wis.*, 608 F.3d 335 (7th Cir. 2010).

Here, Lehman and Rohler had probable cause to arrest Schenke for domestic battery. At the time of his arrest, a person committed Class A misdemeanor domestic battery if he knowingly or intentionally touched a family member in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1.3(b)(4) (eff. Jul. 1, 2016 to Jun. 30, 2019).[2] Taking all of the allegations in Schenke's amended complaint as true, it is undisputed that Lehman and Rohler were told that Schenke: hit Shauna with a belt; used his body to push Shauna over backward; pushed Shauna into a wall; and grabbed Shauna by the chin during their argument. Based on these statements, and the statements regarding the chaotic and heated nature of the day's events, a reasonable officer would believe that Schenke committed the crime of domestic battery against Shauna.

A reasonable officer would also believe that Schenke committed the crime of domestic battery against L.S. and C.S. At the time of his arrest, a person committed

---

[2] Under Indiana law, a law enforcement officer may arrest a person when the officer has probable cause to believe the person has committed a domestic battery under Ind. Code § 35-42-2-1.3, including misdemeanor domestic battery. Ind. Code § 35-33-1-1(5)(B) (eff. Jul. 1, 2016).

Level 6 felony domestic battery if he knowingly or intentionally touched a family member in a rude, insolent, or angry manner, and the person who committed the offense was at least eighteen years of age and committed the offense against a family member who was less than fourteen years of age. Ind. Code § 35-42-2-1.3(b)(4) (eff. Jul. 1, 2016 to Jun. 30, 2019). It is undisputed that Lehman was told that Schenke: struck L.S. with a belt once; struck L.S. with his hand twice; and pinned C.S. to the wall with his hand over her throat, yelling in her ear as she cried. Based on these statements, a reasonable officer would believe that Schenke committed domestic battery against L.S. and C.S.

While Schenke failed to file a response to the motion to dismiss, his amended complaint presents three challenges to the existence of probable cause. First, he claims that Shauna could not properly see his interaction with C.S., and that he had held C.S. by the clavicle, not the throat. (*Id.* at 5.) While Schenke disputes the truth of Shauna's statement, he does not dispute that she made the statement to the officers, and it is the information known to the arresting officers that is relevant in determining the existence of probable cause. *Ericson v. Frankenberry*, 752 F. App'x 327, 329 (7th Cir. 2018) ("[P]robable cause is assessed from the perspective of the arresting officer, not the arrestee.").

Second, Schenke argues that the officers arrested him – not on probable cause – but because they were prejudiced against him based on prior encounters with him and based on erroneous notions of the danger he posed to his family. (DE # 4 at 5, 8-10, 18.)

Even assuming the truth of these claims, the officers nevertheless had probable to arrest Schenke. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.' The officer's subjective motivation is irrelevant." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (internal citation omitted). Here, even taking all of the allegations in the light most favorable to Schenke, the circumstances objectively justified his arrest.

Finally, Schenke argues that there was no probable cause to arrest him because he was merely exercising his parental privilege to corporally punish his children pursuant to *Willis v. State*, 888 N.E.2d 177, 182 (Ind. 2008) ("[A] parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his (or her) child as he (or she) reasonably believes to be necessary for its proper control, training, or education."). There are a number of problems with this argument. First, even if Schenke's actions with respect to L.S. and C.S. were privileged, his actions against Shauna were not, and Lehman and Rohler had probable cause to arrest Schenke for domestic battery against Shauna.

Second, the existence of a potential affirmative defense did not destroy probable cause. While an officer may not ignore conclusively established evidence of the existence of an affirmative defense, the Fourth Amendment imposes no duty on the officer to investigate whether the defense is valid. *McBride v. Grice*, 576 F.3d 703, 708 (7th Cir. 2009) (rejecting plaintiff's claim that arresting officer was required to consider

10

his affirmative defense to battery before arresting him; the evidence available did not conclusively establish that plaintiff's actions were reasonable, as required to establish the affirmative defense). The parental privilege identified in *Willis* depends on the reasonableness of the force used, and the reasonableness of the parent's belief that the force was necessary. Lehman and Rohler did not have any conclusive evidence of the reasonableness of Schenke's use of force against L.S. and C.S., and thus the existence of the potential affirmative defense of parental privilege did not destroy probable cause. *See also Humphrey v. Staszak*, 148 F.3d 719, 724 (7th Cir. 1998) ("[A]n affirmative defense in a criminal case [is] irrelevant to § 1983 analysis where the plaintiff was arrested but has not been subjected to a prior criminal prosecution.").

Based on the foregoing, Schenke's amended complaint fails to allege a claim for false arrest, and defendants' motion to dismiss this claim will be granted. *See Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013) (district court properly dismissed plaintiff's false arrest claim where facts set forth in the complaint, and officers' reports attached to the complaint, indicated that there was probable cause to arrest plaintiff).

    C.    *Defendants Richard, Goldsmith, Ruley, Hodson, and Couch*

Schenke's amended complaint names several other defendants who Lehman identified in his police report as "assisting officers." (DE # 4-1 at 6.) Schenke states that he named these defendants because Lehman listed them on the police report, but he admits that he does not know what their involvement might have been. Without

11

anything more, there is no reasonable inference to be drawn that any of these defendants is responsible for violating Schenke's constitutional rights.

"The pleading standards of Rule 8 are not high, but they require a plaintiff to plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). *See also Lennon v. City of Carmel, Indiana*, 865 F.3d 503, 507 (7th Cir. 2017) (failure to allege that named defendants were personally involved is a "fatal flaw" in a suit under § 1983). A plaintiff cannot state a claim against a defendant by merely including the defendant's name in the caption. *See Collins v. Kibort*, 143 F.3d 331, 335 (7th Cir. 1998); *Black v. Lane*, 22 F.3d 1395, n. 8 (7th Cir. 1994); *see also Schenke v. Phelps*, No. 4:18CV87-PPS/JEM, 2019 WL 2503670, at *1–4 (N.D. Ind. June 17, 2019) ("Obviously, Schenke has not stated any viable claims against Lord or Ferguson if he has failed entirely to allege what actions they took and any basis for their liability to him."). Having failed to raise his right to relief against defendants Richard, Goldsmith, Ruley, Hodson, or Couch beyond the speculative level, they are entitled to dismissal from this case.

D.     *Remaining Claims*

Liberally construing Schenke's amended complaint, Schenke has raised a number of claims that defendants' motion did not address. These claims allege violations of his rights under: the Second Amendment, the Fourth Amendment, and the Fifth Amendment. In their motion to dismiss, defendants requested leave to file a second

motion to dismiss if the court found that their first motion did not address all of the claims contained in Schenke's pleadings. The court will grant this request.

If defendants determine that a second motion to dismiss is appropriate, the parties should address the applicability of *Hanson v. Dane Cty., Wis.*, 608 F.3d 335 (7th Cir. 2010), as well as Schenke's claim that the seizure of his firearms was unlawful. *Compare* Ind. Code §§ 35-33-1-1.5(b); 35-47-14-1, *et seq.*; *with United States v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010) ("The existence of a . . . state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment.").

### IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' partial motion to dismiss. (DE # 13.) The court **DISMISSES** plaintiff James Schenke's claim for false arrest. The court also **DISMISSES** defendants Barry Richard, Bob Goldsmith, Terry Ruley, Scott Hodson, and Matthew Couch from this action, and **DIRECTS** the Clerk to terminate these defendants from the docket. Finally, the court **GRANTS** defendants leave to file a second motion to dismiss addressing Schenke's remaining claims, if appropriate.

**SO ORDERED.**

Date: August 16, 2019

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT